1

2

3

4

5

6

7

8

9                    UNITED STATES DISTRICT COURT

10                   EASTERN DISTRICT OF CALIFORNIA

11                        ----oo0oo----

12

13   MARQUES PHILLIPS and CYNTHIA
     PHILLIPS,
14                                      NO. CIV. S-04-0377 FCD PAN
             Plaintiffs,
15                                      MEMORANDUM AND ORDER
         v.
16
     CITY OF FAIRFIELD, CHIEF OF
17   POLICE WILLIAM GRESHAM,
     OFFICER MARK SCHRAER, OFFICER
18   CHAD TIGERT, OFFICER STEVE
     TROJANOWSKI, JR., OFFICER MIKE
19   BEATTY, OFFICER MATTHEW
     THOMAS, OFFICER STEPHEN RUIZ,
20   OFFICER TROY OVIATT, OFFICER
     JEREMY NIPPER, OFFICER FRANCO
21   CESAR, OFFICER CADE BECKWITH,
     and DOES 1 through 13,
22
             Defendants.
23
                          ----oo0oo----
24

25        This matter is before the court on the City of Fairfield's

26   ("city"), Chief William Gresham's ("Gresham"), and named City of

27   Fairfield police officers' ("officers") motion for summary

28   judgment or, in the alternative, summary adjudication of the

issues.  Marques Phillips was arrested on February 1, 2003.
Plaintiffs Marques Phillips and Cynthia Phillips filed this
action on February 2, 2004, alleging both federal and state law
claims arising out of the February 1, 2003 arrest.  On December
2, 2005, the court heard oral argument on the matter.  For the
reasons set forth below, defendants' motion is GRANTED in part
and DENIED in part.

### BACKGROUND[1]

On January 31, 2003, Marques Phillips ("Marques")[2] was
stopped by Officer Steve Trojanowski, Jr. ("Trojanowski") and
another officer in the 7-11 parking lot in Fairfield, California
for reckless driving.  (UF ¶ 1; Dep. of Marques Phillips,
attached as Ex. F to Pls.' Opp'n to Defs.' Mot. for Summ. J.,
filed Nov. 5, 2005, at 42:10-13 ("M. Phillips Dep.")).  Marques
denies that he was driving recklessly or "bouncing" as the
officers alleged.  (UF ¶¶ 1, 3; M. Phillips Dep. at 41:24-42:5).
Marques had four other people in his car.  (UF ¶ 2).  The
officers made Marques and the passengers step out of the car.
(UF ¶ 4).  The officers searched the car and found a bag of

---

[1]     Unless otherwise noted, the facts herein are
undisputed.  (See Pl.'s Resp. to Def.'s Am. Separate Stmt. of
Undisp. Facts ("UF"), filed Nov. 5, 2005).  Where the facts are
in dispute, the court recounts plaintiffs' version of the facts.

        Defendants object to various pieces of evidence that
plaintiff presents in support of his motion.  Much of the
evidence that defendants object to is immaterial to the court's
analysis of the summary judgment motion.  To the extent that the
evidence is relevant, the court finds that defendants' objections
are without merit.

[2]     Due to the shared last names of the plaintiffs, the
court will refer to each plaintiff by his or her first name in
order to avoid confusion.

marijuana.  (UF ¶ 5).  The officers arrested Marques and towed
his car.  (UF ¶ 6).  His parents retrieved his car for him from
the tow yard the next day.  (UF ¶ 7).

On February 1, 2003, Marques and some friends were waiting
for a pizza he had ordered at Little Ceasar's.  (UF ¶ 8).  While
waiting, Marques noticed some police in the area of North Texas
Street and went to check out what was going on.  (UF ¶¶ 9-10).
He approached the area where the police were.  (UF ¶ 10).  The
police asked Marques if he owned a Blazer.  (UF ¶ 11).  He
responded that he did not.  (UF ¶ 11).  The officers asked for
his car keys and appeared to use them to open a Blazer. (UF ¶
12).  The officers found drugs in the Blazer.  (UF ¶ 13).  The
officers arrested Marques and confiscated his car keys.  (UF ¶
13).

Later that afternoon, Marques called a locksmith to have new
keys made for his car.  (UF ¶ 14).  Marques' mother, Cynthia
Phillips ("Cynthia"), agreed to drive him to meet the locksmith.
(UF ¶ 15).  About 1½ to 2 hours after Marques called the
locksmith, Cynthia drove him in her car to meet the locksmith.
(UF ¶ 16).  Cynthia parked at the Shell gas station, but Marques
told her it was not safe.  (M. Phillips Dep. at 53:6-9).  They
drove to the Jack-in-the-Box parking lot at 1972 North Texas
Street, which was near the parking lot where Marques' car was
parked.  (UF ¶ 17).  Marques told Cynthia to park under a street
light because it was dark by that time.  (UF ¶ 19).  Cynthia
backed into a parking space.  (UF ¶ 20).  Marques could see his
car from that angle.  (UF ¶ 21; M. Phillips Dep. at 53:13-15).

The area of North Texas and East Tabor Streets, the same area where Cynthia and Marques were, is known for high levels of narcotics sales. (UF ¶ 23). This area is considered dangerous by Fairfield Police and Fairfield citizens. (UF ¶ 23). On this same night, members of the Crime Suppression and Narcotics Team from the Fairfield Police Department were conducting undercover narcotics purchases, called "buy/bust" operations, in areas known for a high level of narcotics sales. (UF ¶¶ 22, 25). Police consider these to be very dangerous operations for the police officers involved. (UF ¶ 25). Prior to sending an undercover officer into this area to purchase narcotics, Trojanowski drove into the area to check out the site and look for suspected or known drug dealers. (UF ¶ 26). Undercover officers would then be sent in to attempt to purchase narcotics. (UF ¶ 26). Members of the Crime Suppression Unit and Narcotics Team taking part in the operation were Officers Mike Beatty, Cade Beckwith, Franco Cesar, Mathew Thomas, Troy Oviatt, and Stephen Ruiz. (UF ¶ 26). Officer Jeremy Nipper was stationed in a surveillance van. (UF ¶ 26).

Defendants contend that the Fairfield Police Department had just received a call regarding a male who was loitering in the Jack-in-the-Box parking lot who was in possession of a firearm. (UF ¶ 27). Defendants also contend that the suspect fit the general description of Marques and that Trojanowski heard this warning dispatch. (UF ¶ 27). Plaintiffs present evidence that, at the very least, demonstrate inconsistencies regarding whether any of the officers, including Trojanowski, remembered hearing

this dispatch or the description of the suspect in the dispatch.[3]

Approximately fifteen to twenty minutes after Marques and Cynthia arrived, Marques got out of the car to go get a drink. (UF ¶ 28).  He crossed the parking lot to go to the Liquor Tree Store.  (UF ¶ 29).  He returned to the car where he and his mother sat for another thirty to forty minutes.  (UF ¶ 30). Marques saw a white van pull into the parking lot where his car was parked.  (UF ¶ 31).  He assumed it was the locksmith.  (UF ¶ 31).  Marques got out of the car to contact the driver of the van.  (UF ¶ 32).  When he reached the van, however, it was not the locksmith.  (UF ¶ 33).  He turned around and headed back to his mother's car, which was located on the other side of the Jack-in-the-Box parking lot.  (UF ¶¶ 33-34).

At approximately 8:00 p.m. that evening, Trojanowski was parked in the parking lot of 1972 North Texas Street near the Shell Station and Jack-in-the-Box.  (UF ¶ 35).  This parking lot is a high crime, high drug sales area.  (UF ¶ 36).  Trojanowski saw Marques walking around the parking lot from the area of the Shell Station to the Liquor Tree Store and back again to the parked car.  (UF ¶ 37).  Trojanowski recognized Marques as someone who was previously arrested for possession of marijuana twice in the last twenty-four hour period.  (UF ¶ 38).

Defendants contend that Trojanowski knew from personal experience that Marques had threatened violence against the

---

[3]    Plaintiffs also contend that evidence of this dispatch was determined to be inadmissible at the Discovery Hearing on October 13, 2005.  Disc. Hr'g, attached as Ex. A to Pls.' Opp'n to Defs.' Mot. for Summ. J., filed Nov. 5, 2005, at 28:23-29:17 ("Disc. Hr'g").

police in prior arrests.  (UF ¶ 39).  Plaintiffs dispute this
contention.  (M. Phillips Dep. at 50:12-16; Decl. of Marques
Phillips in Opp'n to Defs.' Mot. for Summ. J., filed Nov. 5,
2005, ¶ 3 ("M. Phillips Decl.")).  Defendants assert that
Trojanowski, upon seeing Marques walk back and forth across the
parking lot, believed Marques to be loitering in violation of
California Health and Safety Code § 11532.  (UF ¶ 40).
Defendants further assert that Trojanowski believed Marques could
be the armed suspect of the earlier dispatch.  (UF ¶ 40).
Plaintiffs dispute these assertions.  (Disc. Hr'g at 28:23-
29:17).  Defendants contend that in Trojanowski's mind Marques'
actions seemed deliberately fashioned to undermine the officers'
buy/bust operation, (UF ¶ 40), and that because of the danger
presented to Trojanowski, the decision was made to arrest Marques
with a "high-risk stop" procedure.  (UF ¶ 41).  Plaintiffs also
dispute these contentions.  (Disc. Hr'g at 28:23-29:17).  A high-
risk stop requires police to have their guns drawn as they order
a suspect to get down on the ground.  (UF ¶ 42).  This is done to
assure officer safety, safety of the community and safety of the
suspect.  (UF ¶ 42).

    When Marques entered the parking lot and approached the
passenger side of his mother's car, he looked to his left and saw
Trojanowski.  (UF ¶ 43).  As he walked, he heard somebody say
"get on the ground."  (UF ¶ 43; M. Phillips Dep. at 58:7-9,
62:11-12, 63:3-5).  Marques did not know who it was, but he

obeyed the command and laid down face first.[4]  (Pl.'s Am. Stmt.
of Disp. Facts ("SDF"), filed Nov. 5, 2005, ¶ 1).  Cynthia had
been watching Marques walk across the parking lot, but when
Marques laid down on the ground, she could no longer see him.
(UF ¶ 47).   Marques was about five feet from his mother's car.
(M. Phillips Dep. at 63:24-25-64:1).  Marques turned his head and
saw Trojanowski training his gun on him.  (SDF ¶ 2).  Trojanowski
also trained his gun on Cynthia.  (SDF ¶ 3).  Trojanowski told
Cynthia to stay in her car and keep her hands up.  (SDF ¶¶ 4, 5).
Marques saw Trojanowski advance quickly toward him.  (UF ¶ 48).
Marques asked Trojanowski what he had done, but received no
answer.  (UF ¶ 47).  When Trojanowski reached Marques, he stomped
the back of his neck.  (SDF ¶ 6).  Marques screamed in pain.
(SDF ¶ 7).  Trojanowski continued to train his gun on both
Marques and Cynthia.  (SDF ¶ 9).  He then dropped down on top of
Marques and drove his knee into his back.  (SDF ¶ 8).
Trojanowski then picked Marques up and slammed him back into the
ground.  (SDF ¶ 10).  Marques continued to scream in pain, but
did not resist Trojanowski.  (SDF ¶¶ 11, 12).  Cynthia then saw
six to eight officers approach Marques.  (UF ¶ 51).  Trojanowski
and Officer Tigert placed handcuffs on Marques.  (UF ¶ 57).
Officer Ruiz and another officer helped put REPP restraints on
Marques' ankles.[5]  (Decl. of Officer Stephen Ruiz in Supp. of

---

[4]     Defendants assert that Marques first dropped to his
knees and that Trojanowski placed his foot on Marques' upper back
to push him to the ground.  (See Defs.' Am. Sep. Stmt of Undisp.
Facts ("Defs.' ASSUF"), filed Oct. 18, 2005, ¶¶ 44, 50).

[5]     Defendants contend that Marques started kicking his
                                            (continued...)

1  Defs.' Mot. for Summ. J., filed Oct. 18, 2005, at ¶ 9).  The

2  officers tied Marques' handcuffs to his ankle cuffs.  (SDF ¶ 13).

3  Marques did not resist the officers.  (SDF ¶ 14).  The officers

4  punched, clubbed, kicked, and slammed Marques into the ground

5  multiple times.  (SDF ¶ 15).  Marques continued to scream in pain

6  and passed out.  (SDF ¶¶ 16-17).  The officers continued to

7  punch, club, kick, and slam Marques onto the ground.  (SDF ¶ 18).

8  A young officer told Cynthia she could get out of the car.  (UF ¶

9  52).  Sergeant Schraer, who was standing at the front driver's

10  side of Cynthia's car, told the officers to keep Cynthia back and

11  out of the way.  (UF ¶ 53).  The officers "moved in toward [her]"

12  and she "moved back behind [her] car door."  (Decl. of Cynthia

13  Phillips in Opp'n to Defs.' Mot. for Summ. J., filed Nov. 5,

14  2005, ¶ 8 ("C. Phillips Decl."); Dep. of Cynthia Phillips,

15  attached as Ex. E to PLS.' Opp'n to Defs.' Mot. for Summ. J.,

16  filed Nov. 5, 2005, at 88:1-2; 143:7-10. ("C. Phillips Dep.")).

17  Cynthia then stepped onto the door jamb to see over her car.  (C.

18  Phillips Dep. 88:4-7).  Cynthia could see that the officers were

19  hitting Marques with their batons.  (C. Phillips Dep. 88:7-12,

20  17-89:19, 91:19-92:18).  The officers carried Marques to a police

21  car by his restraints.[6]  (SDF ¶ 20).

---

23  [5](...continued)
   legs which warranted the use of ankle restraints.  (Defs.' ASSUR
24  ¶ 58).

25  [6]   Defendants contend that Marques "was helped" to the
   police car by Officer Beckwith and another officer.  (Defs.'
26  ASSUR ¶ 58).  Defendants also contend that in her deposition,
   Cynthia said Marques was carried by his arms and legs, not his
27  restraints.  (Defs.' Opp. to PASDF 20).  Plaintiffs assert that
   Cynthia stated that the officers carried Marques by the top of
28                                                  (continued...)

The officers "threw" Marques into the police car.  (SDF ¶ 21).  An officer got into the police car and struck Marques while he was handcuffed and anklecuffed.  (SDF ¶ 22).  Marques was crying and screaming in pain.  (SDF ¶ 23).  In order to remove him from the crowd that was gathering around the area of Cynthia's car, the officers then took Marques to the Food Max parking lot in front of Hollywood Video.  (UF ¶ 59).  The officers "snatched" him out of the police car by the "straps." (M. Phillips Dep. 75:22-76:2).  The officers patted him down, lifted his shirt, and took off his shoes and socks.  (UF ¶ 61). The officers did not find any contraband on Marques.  (SDF ¶ 25). The officers then transported him to the County Jail.  (UF ¶ 62). A booking photo of Marques was taken at the jail.  (UF ¶ 63).

While the officers were carrying Marques to the car, Sergeant Schraer came around to where Cynthia was, and the two engaged in conversation.  (UF ¶ 55).  Her view was blocked by the car and by Sergeant Schraer during the conversation.  (UF ¶ 55). Cynthia asked Sergeant Schraer two times what Marques did wrong, and both times he yelled back that Marques sells drugs.  (SDF ¶¶ 26-29).  Cynthia asked him the same question a third time and Sergeant Schraer responded that Marques was loitering.  (SDF ¶¶ 30-31).  Cynthia told Sergeant Schraer that Marques was not loitering because he was with her waiting for the locksmith.

---

[6](...continued)
his arms and legs.  See UF ¶ 13.  The court, however, does not have that particular deposition page.  The deposition testimony does state that Marques was restrained by his hands and his ankles, and the two sets of restraints were tied together.  (C. Phillips Dep. at 93:7-13).  Cynthia also testified that Marques was carried or lifted up.  (Id. at 93:21-94:5).

(SDF ¶ 32).   Sergeant Schraer then said that Marques identified an undercover police officer.  (SDF ¶ 33).  He told her that she should know how serious it was to identify an undercover police officer because her husband was a police officer.  (SDF ¶ 34). Cynthia told him that he was wrong.  (SDF ¶ 35).  Sergeant Schraer shrugged his shoulders and said that he knew.  (SDF ¶ 36).  Cynthia was crying.  (SDF ¶ 37).   She did not see Marques again because he was gone by the time the conversation ended. (UF ¶ 55).  Cynthia was never touched by any of the officers. (UF ¶ 56).

The officers' actions caused Marques extreme physical and mental pain.  (SDF ¶¶ 43-44).  Marques had to receive medical attention for his physical pain.  (M. Phillips Dep. at 80:13-83:6, 85:3-10).  The officers' actions caused Cynthia extreme mental pain and physical manifestations for which she had to receive medical attention.  (SDF ¶¶ 46-47).

### STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the

1  nonmoving party will bear the burden of proof at trial on a

2  dispositive issue, a summary judgment motion may properly be made

3  in reliance solely on the 'pleadings, depositions, answers to

4  interrogatories, and admissions on file.'"  <u>Id.</u> at 324.  Indeed,

5  summary judgment should be entered against a party who fails to

6  make a showing sufficient to establish the existence of an

7  element essential to that party's case, and on which that party

8  will bear the burden of proof at trial.  <u>Id.</u> at 322.  In such a

9  circumstance, summary judgment should be granted, "so long as

10  whatever is before the district court demonstrates that the

11  standard for entry of summary judgment, as set forth in Rule

12  56(c), is satisfied."  <u>Id.</u> at 323.

13      If the moving party meets its initial responsibility, the

14  burden then shifts to the opposing party to establish that a

15  genuine issue as to any material fact actually does exist.

16  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,

17  585-87 (1986); <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S.

18  253, 288-289 (1968).  In attempting to establish the existence of

19  this factual dispute, the opposing party may not rely upon the

20  denials of its pleadings, but is required to tender evidence of

21  specific facts in the form of affidavits, and/or admissible

22  discovery material, in support of its contention that the dispute

23  exists.  Fed. R. Civ. P. 56(e).  The opposing party must

24  demonstrate that the fact in contention is material, i.e., a fact

25  that might affect the outcome of the suit under the governing

26  law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986),

27  and that the dispute is genuine, i.e., the evidence is such that

28  /////

a reasonable jury could return a verdict for the nonmoving party,
Id. at 251-52.

In the endeavor to establish the existence of a factual
dispute, the opposing party need not establish a material issue
of fact conclusively in its favor.  It is sufficient that "the
claimed factual dispute be shown to require a jury or judge to
resolve the parties' differing versions of the truth at trial."
First Nat'l Bank, 391 U.S. at 289.  Thus, the "purpose of summary
judgment is to 'pierce the pleadings and to assess the proof in
order to see whether there is a genuine need for trial.'"
Matsushita, 475 U.S. at 587 (quoting Rule 56(e) advisory
committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines
the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any.  Rule
56(c); SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir.
1982).  The evidence of the opposing party is to be believed, and
all reasonable inferences that may be drawn from the facts placed
before the court must be drawn in favor of the opposing party.
Anderson, 477 U.S. at 255.  Nevertheless, inferences are not
drawn out of the air, and it is the opposing party's obligation
to produce a factual predicate from which the inference may be
drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224,
1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party
"must do more than simply show that there is some metaphysical
doubt as to the material facts. . . . Where the record taken as a
whole could not lead a rational trier of fact to find for the

1  nonmoving party, there is no 'genuine issue for trial.'"

2  <u>Matsushita</u>, 475 U.S. at 586-87, 106 S. Ct. at 1356.

3  **ANALYSIS**

4      In the complaint, plaintiffs alleged violations of various

5  federal and state laws.  In response to defendants' motion for

6  summary judgment,[7] plaintiffs do not oppose defendants' motion

7  with respect to the following claims: (1) plaintiffs' claims

8  against Gresham, the officers, and the city brought under 42

9  U.S.C. § 1983 for all constitutional violations except the Fourth

10  Amendment claims; (2) plaintiffs' claims against Gresham and the

11  officers brought under 42 U.S.C. § 1981; (3) plaintiffs' claims

12  against the officers brought under Cal. Civ. Code § 51.7; (4)

13  plaintiffs' claims against Gresham and the officers brought under

14  Cal. Civ. Code § 52.1; (5) plaintiffs' claims against Gresham

15  based upon negligent infliction of emotional distress,

16  negligence, negligent selection, training, retention,

17  supervision, investigation, and discipline, and *respondeat*

18  *superior* liability for the actions of the officers; (6)

19  plaintiff's claims against the officers based upon negligence;

20  and (7) plaintiff's claims against the city based upon negligent

21  selection, training, retention, supervision, investigation, and

22  discipline.

23      Plaintiffs' remaining claims are (1) claims for relief under

24  42 U.S.C. § 1983 for Fourth Amendment violations by the officers,

25  Gresham, and the city; (2) claims for relief under state law

26  _____

27      [7]    Plaintiffs failed to respond to many of these claims in
their opposition.  Plaintiffs further clarified their non-
opposition to the dismissal of these claims during the hearing

28  held December 2, 2005.

13

against the officers for intentional torts; and (3) a claim for relief under state law against the city for *respondeat superior* liability against the city for the conduct of the officers. Defendants do not address plaintiffs' claims for intentional infliction of emotional distress in their motion for summary judgment.  As such, plaintiffs' claims survive this motion and will not be addressed by the court.

**A.   Section 1983 Claims**

Plaintiffs Marques Phillips and Cynthia Phillips bring claims against the officers, Gresham, and the city pursuant to 42 U.S.C. § 1983.  Plaintiffs assert that the officers acted under the color of law to deprive them of their Fourth Amendment constitutionally protected rights to be free from unreasonable search and seizure.  Defendants move for summary judgment on the ground that the claims fail as a matter of law and that the officers are entitled to qualified immunity.

**1.   Marques Phillips' Claims against Defendant Officers**

Plaintiff Marques Phillips asserts that defendant officers violated his Fourth Amendment rights because they did not have probable cause to arrest him and because they used excessive force.  Defendants contend that there was probable cause to arrest plaintiff and that the officers used a minimal amount of force to overcome plaintiff's resistance.  Defendants also argue that the officers are protected by qualified immunity.

**a.   Probable Cause**

Plaintiffs assert that defendants had no probable cause to arrest Marques Phillips.  Plaintiffs' theory is that defendant Trojanowski created or fabricated reasons to arrest Marques

14

Phillips.  (Hr'g on Def.'s Mot. for Summ. J. ("SJ Hr'g"), heard Dec. 2, 2005).  Trojanowski was involved in all three arrests of Marques Phillips that occurred within an approximately 24 hour period.  (Id.)  In the arrest at issue in this case, according to defendants, Marques Phillips was walking through an area where defendant officers had set up a dangerous buy/bust operation. (Id.)  Defendants admit that part of the reason for the arrest of Marques Phillips was the disruption or the potential disruption of the buy/bust operation by the unknowing plaintiff as he walked through the parking lot.  (Id.)

     "Probable cause exists when the police know 'reasonably trustworthy information sufficient to warrant a prudent person in believing that the accused had committed or was committing an offense.'"  United States v. Del Vizo, 918 F.2d 821, 825 (9th Cir. 1990) (quoting United States v. Delgadillo-Velasquez, 856 F.2d 1292, 1296 (9th Cir. 1988)).  "In evaluating a custodial arrest executed by state officials, federal courts must determine the reasonableness of the arrest in reference to state law governing the arrest."  Pierce v. Multnomah County, 76 F.3d 1032, 1938 (9th Cir. 1996) (internal quotations omitted).  California law requires that the court look to the totality of the circumstances known by the officer to decide whether the officer's determination of probable cause was reasonable.  See People v. Guajardo, 23 Cal. App. 4th 1738 (1994); Agar v. Superior Court, 21 Cal. App. 3d 24, 29 (1971).

     Defendants assert that defendant officers had probable cause to arrest plaintiff Marques Phillips.  Plaintiff was arrested pursuant to California Health and Safety Code Section 11532,

which sets forth the guidelines for unlawful loitering in a public place with the intent to engage in narcotics related activity. Specifically, defendants assert probable cause pursuant to § 11532(b)(10) which provides that a factor "in determining whether a person has the requisite intent to engage in drug-related activity" is whether that person has engaged "in any other behavior indicative of illegal drug-related activity" in the past six months. Id. Defendants contend that because the parking lot where plaintiff was arrested was known for high levels of narcotics sales, and because Marques Phillips had been arrested earlier in the same day for drug related activity by Trojanowski, the initial arresting officer, defendants had probable cause to arrest plaintiff.

Section 11532 is an anti-loitering statute. Before, the officers may even consider factors relating to whether a person is loitering in a manner and in circumstances that manifest an intent to engage in drug-related activity, the officers must have had probable cause to believe that the person was actually loitering. See id. In this case, plaintiffs present evidence that Marques was waiting for a locksmith with his mother in her car. He approached a white van, which he thought belonged to the locksmith. After determining that the van did not belong to the locksmith, plaintiff was returning to his mother's car when he was stopped and arrested by the officers. Plaintiff's actions in walking to and from a white van is not enough for this court to find that defendant officers had probable cause to arrest plaintiff for loitering as a matter of law.
/////

16

Further, the circumstances surrounding plaintiff's prior arrests for "drug-related activity" are disputed.  Plaintiffs contend that the arrests of Marques Phillips were only tangentially related to drugs.  Plaintiffs present evidence that in none of the prior arrests were drugs found upon Marques Phillips' person.  Therefore, even if the officers had probable cause to believe that plaintiff was loitering, defendants may not have had an objectively reasonable basis for determining that plaintiff had an intent to engage in drug-related activity under § 11532.

### b.  Excessive Force

Plaintiffs also assert that, in addition to lacking probable cause, defendants used excessive force in the arrest of Marques Phillips.  Defendants argue that some of the defendant officers were not at the scene and that others did not actually touch plaintiff.[8]  Defendants also argue that the force applied to plaintiff was reasonable because (1) plaintiff appeared to the officers to be resisting a lawful detention; (2) the officers had just received word from dispatch that there was an armed man in the parking lot; and (3) Trojanowski believed that Marques Phillips had threatened violence on prior occasions.

---

[8]   Plaintiffs present evidence that all defendant officers were involved in the incident or present that night.  (UF ¶¶ 66-67).  Plaintiffs are amenable to dropping claims against defendant officers who could not be identified by either plaintiff as involved in the alleged arrest and beating of Marques Phillips.  (SJ Hr'g).  However, defendants have refused to turn over photographs of defendant officers for identification by plaintiffs.  As was previously indicated to the parties, the court would entertain a motion to reopen discovery to allow plaintiffs the opportunity to identify those officers involved in the alleged wrongful conduct.

1    Whether law enforcement officials used excessive force in

2  the course of making an arrest is properly analyzed under the

3  Fourth Amendment's objective reasonableness standard.  Graham v.

4  Connor, 490 U.S. 386, 388 (1989).

5          Determining whether the force used to effect a
           particular seizure is 'reasonable' under the Fourth
6          Amendment requires a careful balancing of 'the nature
           and quality of the intrusion on the individual's Fourth
7          Amendment interests' against the countervailing
           governmental interests at stake.

8

9  Id. at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)).

10 The reasonableness of a particular use of force must be evaluated

11 from the perspective of a reasonable officer on the scene.  Id.

12 A proper application of the reasonableness inquiry

13         requires careful attention to the facts and
           circumstances of each particular case, including the
14         severity of the crime at issue, whether the suspect
           poses an immediate threat to the safety of the officers
15         or others, and whether he is actively resisting arrest
           or attempting to evade arrest by flight.

16

17 Robinson v. Solano County, 278 F.3d 1007, 1013-14 (9th Cir. 2002)

18 (internal quotations omitted); see also McKenzie v. Lamb, 738

19 F.2d 1005, 1011 (9th Cir. 1984) (the determination requires the

20 analysis of factors such as "the requirements for the officers'

21 safety, the motivation for the arrest, and the extent of the

22 injury inflicted").

23    In this case, plaintiffs present evidence that defendants

24 inflicted a significant amount of injury upon Marques Phillips.

25 Plaintiff was ordered to get on the ground.  Trojanowski trained

26 his gun on him and stomped the back of his neck.  Trojanowski

27 then dropped down on top of plaintiff and drove his knee in his

28 back.  Subsequently, plaintiff was handcuffed and his ankles were

18

restrained.  Defendant officers punched, clubbed, kicked, and
slammed plaintiff into the ground multiple times.  Plaintiffs
allege that as a result of this interaction, Marques Phillips
suffered numerous injuries.

Further, while plaintiffs have presented a triable issue of
fact regarding the existence of probable cause to arrest, the
arrest at issue was for a violation of California Health and
Safety Code Section 11532, which is a non-violent misdemeanor.
Therefore, the severity of the crime at issue weighs against the
use of force.  While defendants contend that such force was
necessary to execute the arrest, plaintiffs present
countervailing evidence that Marques Phillips did not resist the
arrest and followed the officer's command to get down.  Viewing
the evidence in the light most favorable to the non-moving party,
the lack of resistance weighs against the use of such force.

Finally, while defendants argue that Trojanowski believed
that Marques posed a threat to officer safety, plaintiffs present
evidence to the contrary.  Defendants argue that Trojanowski and
officers heard a dispatch warning of an armed man in the vicinity
of the area where plaintiff was arrested.  Plaintiffs dispute
whether any of the officers actually heard this dispatch.  It is
also unclear whether a description of the "armed man" was given
and if so, whether the description matched the appearance of
plaintiff.  (SJ Hr'g).  Defendants also argue that Trojanowski
believed that Marques Phillips had threatened violence in the
past.  Plaintiffs dispute that Marques Phillips previously
threatened violence against the police.  Therefore, plaintiffs
have presented sufficient evidence to create a triable issue

19

1   regarding whether Trojanowski actually believed that plaintiff
2   posed a threat to officer safety or whether such belief was
3   reasonable.

4       Based upon the foregoing analysis, plaintiffs have presented
5   sufficient evidence to demonstrate that there is a triable issue
6   of fact regarding whether defendant officers had probable cause
7   to arrest Marques Phillips.  Plaintiffs have also presented
8   evidence demonstrating a triable issue of fact regarding whether
9   excessive force was used in effectuating the arrest.

10              **c.  Qualified Immunity**

11      Defendants argue that, even if the officers made a mistake
12  regarding probable cause or the amount of force required, they
13  are immune from suit based upon the doctrine of qualified
14  immunity.  The doctrine of qualified immunity protects from suit
15  government officers who do not knowingly violate the law.  Gasho
16  v. United States, 39 F.3d 1420, 1438 (9th Cir. 1994).  Qualified
17  immunity is a generous standard designed to protect "all but the
18  plainly incompetent or those who knowingly violate the law."
19  Burns v. Reed, 500 U.S. 478, 495 (1991) (citation omitted).  A
20  law officer can establish qualified immunity by demonstrating (1)
21  that the law governing the officer's conduct was not clearly
22  established at the time of the challenged actions, or (2) that
23  under the clearly established law, an officer could reasonably
24  have believed that the alleged conduct was lawful.  See Katz v.
25  United States, 194 F.3d 962, 967 (9th Cir. 1999); Mendoza v.
26  Block, 27 F.3d 1357, 1360 (9th Cir. 1994); see also Harlow v.
27  Fitzgerald, 457 U.S. 800, 818 (1982) (observing that police
28  officers "are shielded from liability for civil damages insofar

20

as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").

The question of immunity generally is not one for the jury. Qualified immunity "'is an immunity from suit rather than a mere defense to liability' . . . . [Therefore,] [i]mmunity ordinarily should be decided by the court long before trial." Hunter v. Bryant, 502 U.S. 224, 228 (1991) (citation omitted).  However, if a genuine issue of material fact exists regarding the circumstances under which the officer acted, then the court should make the determination after the facts have been developed at trial.  Act Up!\Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993).

The initial inquiry that the court must make to determine whether an official is entitled to qualified immunity is whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001) (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). Based upon the court's above analysis of defendant officers' potential liability, the court has found that plaintiffs have presented sufficient evidence for a reasonable juror to find that a constitutional violation or violations did occur.

If, as in this case, a violation could be made out on a favorable view of the parties' submissions, the next inquiry is whether the constitutional right was clearly established.  Id. This inquiry must be taken in the light of the specific context of the case.  The contours of the right must be sufficiently

21

clear that a reasonable official would understand that what he is doing violates that right.  Id.  However, this does not mean that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but, rather, in light of pre-existing law, the unlawfulness must be apparent.  Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal citations omitted).  The salient question is whether the law at the time of the disputed conduct gave defendants "fair warning that their alleged treatment of plaintiffs was unconstitutional." See id. at 741.  There must exist a clearly established rule so that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 205-06.

The conduct in question surrounds the arrest of Marques Phillips on February 1, 2003.  At this time, the law regarding the fundamental right to be protected from unlawful arrests and the use of unreasonable force in the execution of arrests was clear.  Individuals have a right to be free from unreasonable seizures unless there is probable cause to arrest.  See People v. Ellison, 68 Cal. App. 4th 203, 211 (1998) (police must have probable cause to arrest an individual pursuant to Section 11532).  In this case, because plaintiffs have provided evidence that Marques was not loitering and did not appear to be loitering, the officers arrest of plaintiff under a loitering statute would not be reasonable.  See Saucer, 533 U.S. at 205-06. Individuals also have a right to be free from the use of excessive force in effectuating an arrest.  See Mendoza v. Block, 27 F.3d 1357, 1361-62 (9th Cir. 1994) ("Officers have a

considerable amount of guidance from the courts in the
permissible use of force while making an arrest.").  The use of
weapons, restraining individuals by force, handcuffing, and
throwing individuals against the ground is a violation of the
Fourth Amendment where the arrested individual did not resist
arrest and was not a risk to the safety of the arresting
officers.  See McKenzie, 738 F.2d at 1010.  Plaintiff presents
evidence that these were the circumstances of his arrest.

In light of the established state of the law at the time in
question, defendant officers had "fair warning that their alleged
treatment of plaintiff was unconstitutional."  Hope, 536 U.S. at
741.  Because there are triable issues of fact as to whether the
officers had probable cause to arrest Marques Phillips and
whether the force used to arrest Marques Phillips was
unreasonable, and because defendants had notice that their
alleged conduct was unconstitutional, the court cannot find that
defendant officers are entitled to qualified immunity at this
stage of the litigation.

Therefore, defendants motion for summary judgment regarding
the claims of plaintiff Marques Phillips against defendant
officers based upon Fourth Amendment violations is DENIED.

### 2.   Cynthia Phillips' Claims against Defendant Officers

Plaintiff Cynthia Phillips asserts that defendant officers
violated her Fourth Amendment rights because they seized her
without reasonable suspicion and because Trojanowski used
excessive force when he trained a gun on her.  Defendants contend
that Cynthia Phillips was never detained by the police, and
therefore, never seized.  Defendants also contend that the use of

1  the gun was reasonable.  Defendants assert that even if the
2  officers were mistaken in the alleged seizures or use of force,
3  the officers are protected by qualified immunity.

4      Plaintiffs assert that defendants seized Cynthia Phillips on
5  two occasions during the arrest of Marques Phillips.  "[F]or
6  there to be a seizure there must be a restraint of liberty such
7  that the person reasonably believes her is not free to leave."
8  Robinson, 278 F.3d at 1013 (internal quotation omitted).

9      Plaintiffs present evidence that during the arrest of
10 Marques Phillips, Trojanowski trained a gun on Cynthia Phillips
11 while she sat in her car.  Plaintiffs rely primarily on the Ninth
12 Circuit's decision in Robinson v. Solano County to justify their
13 claim that Trojanowski's training of his gun on plaintiff
14 constituted a seizure for purposes of the Fourth Amendment.
15 However, in Robinson, the fact of a seizure was not disputed.
16 Id.  Further, in Robinson, the arresting officers pointed a gun
17 at plaintiff from a distance of 3-6 feet, and the officers
18 subsequently handcuffed plaintiff and placed him in the back of
19 the squad car.  Id.

20     In United States v. Del Vizo, the Ninth Circuit held that
21 the defendant was "seized" where the police ordered him to step
22 out of his vehicle and handcuffed him while the officers were
23 brandishing weapons.  918 F.2d 821, 824 (9th Cir. 1990).  In
24 United States v. Delgadillo-Velasquez, the Ninth Circuit ruled
25 that individuals were "seized" when police approached the
26 suspects with weapons drawn, ordered them to halt, and required
27 them to lie face down in the street while they were handcuffed.
28 856 F.2d at 1295.  However, there is no authority supporting the

contention that pointing a gun at an individual, without more, constitutes a seizure.

Plaintiffs also present evidence that Sergeant Schraer told some of the officers to keep Cynthia Phillips back from Marques Phillips, and the officers formed a half circle around her. Plaintiffs contend that Cynthia Phillips retreated until she was trapped behind the car door and that she reasonably believed she was not free to leave her car.

The circumstances surrounding Trojanowski's use of a gun and the officers' formation of a half circle around the plaintiff demonstrate that Cynthia Phillips was not seized. Trojanowski trained that gun at both Cynthia Phillips and Marques Phillips during the arrest of Marques Phillips, which occurred within a few feet of the car. An officer told Cynthia Phillips she could get out of her car. When Sergeant Schraer ordered the officers to keep plaintiff back, the officers did not keep her from leaving, but prevented her from coming any closer to Marques Phillips. Plaintiff was never ordered to get out of or stay in the car, never physically touched by the officers, and never physically restrained by the officers. A reasonable person would have believed that she was free to stay in her car, leave her car, or leave the vicinity. Defendant officers' action in preventing her from approaching or intervening in the arrest of Marques Phillips does not constitute a "seizure" for purposes of the Fourth Amendment.

Because plaintiffs have not presented evidence that Cynthia Phillips was seized, plaintiffs do not have colorable claims for violations of Cynthia Phillips' Fourth Amendment rights. As

1  such, defendants' motion for summary judgment regarding Cynthia

2  Phillips' claims against defendant officers is GRANTED.

3  **3.  Plaintiffs' Claims against Gresham**

4      Plaintiffs Marques Phillips and Cynthia Phillips contend

5  that Chief Gresham is liable under § 1983 in his individual

6  capacity for his actions and inaction.  Specifically, plaintiffs

7  argue that Gresham failed to train the officers, failed to

8  supervise Trojanowski, and failed to discipline Trojanowski for

9  citizen complaints of excessive force.

10     In the case of a supervisor, "individual liability hinges

11 upon his participation in the deprivation of constitutional

12 rights."  Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th

13 Cir. 1991).  This participation may involve the setting in motion

14 of acts which cause others to inflict constitutional injury.

15 Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978).  For the

16 court to hold defendant liable in his individual capacity,

17 plaintiffs must demonstrate: (1) that defendant's "own culpable

18 action or inaction in the training, supervision, or control of

19 his subordinates" caused the constitutional injury; (2) that the

20 defendant "acquiesce[d] in the constitutional deprivations of

21 which [the] complaint is made;" or (3) that his conduct showed a

22 "reckless or callous indifference to the rights of others."  See

23 Larez, 946 F.2d at 646 (internal citations omitted).

24     Plaintiffs rely on Larez to substantiate their arguments

25 that Gresham should be held liable in his individual capacity.

26 The Larez court held that ratification by inaction in response to

27 a subordinate's conduct that violate's a plaintiff's

28 constitutional right may be sufficient to hold a supervisor

26

1   responsible for constitutional deprivations.  Id.  However, in

2   Larez, the police chief had significantly more involvement with

3   the constitutional violations than Gresham did.  In Larez, there

4   was evidence that the chief created or maintained a policy by

5   which citizen complaints against officers were rarely sustained.

6   The plaintiffs in that case presented expert testimony that a two

7   year comparative study demonstrated that claims brought by the

8   police department against officers were almost always sustained

9   while complaints by citizens rarely were.  Id. at 635.  The

10  plaintiffs' expert witness, "armed with both many years practical

11  police experience and empirical data on police department

12  procedures and operations nationwide and in Los Angeles

13  specifically," testified that he would have disciplined the

14  officers and would have established new procedures so that the

15  violations did not occur in the future.  Id.  The plaintiffs in

16  that case also presented evidence that the police chief signed a

17  letter, informing the plaintiff that none of his complaints would

18  be sustained.  Id.

19      Plaintiffs produce evidence that Trojanowski had six citizen

20  complaints against him for excessive force.  Trojanowski was

21  investigated and exonerated for each claim.  Further, plaintiffs'

22  civilian complaint was investigated and the officers involved

23  were exonerated.  Plaintiffs contend that the investigation into

24  their complaint was "less than cursory."  PLS.' Opp'n at 23.

25      The evidence presented by plaintiffs does not demonstrate

26  the type of acquiescence and ratification as in Larez to

27  establish a triable issue of individual liability for defendant

28  Gresham.  Plaintiffs do not present any expert testimony that

27

Gresham created or maintained a policy whereby civilian complaints of excessive force are meaningless.  Plaintiffs have not presented any evidence to demonstrate that the investigations into the prior civilian complaints against Trojanowski or the investigations into their own complaint against the officers was cursory, inadequate, or meaningless.  Plaintiffs have not presented any evidence that Gresham acted in any way to condone the use of excessive force against the plaintiffs or others.  Because plaintiffs have failed to present evidence to raise a triable issue of fact, defendants' motion for summary judgment regarding Gresham's individual capacity liability under § 1983 is GRANTED.

### 4.  Plaintiffs' Claims against the City

Both Marques Phillips and Cynthia Phillips assert that defendant City of Fairfield is liable under § 1983.  Under Monell and its progeny, a plaintiff may hold a municipality liable under section 1983 if his injury was inflicted pursuant to city policy, regulation, custom, or usage.  Chew v. Gates, 27 F.3d 1432, 1444 (9th Cir. 1994) (citing Monell, 436 U.S. at 690-91, 694).  The existence of a city policy may be established in one of three ways:

> First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity. Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy.  Whether a particular official has final policy-making authority is a question of state law.  Third, the plaintiff may prove that an official with final policy-making authority

28

1      ratified a subordinate's unconstitutional decision or
2      action and the basis for it.

3  Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (quoting
4  Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1992)
5  (citations and internal quotations omitted)).  Assuming that a
6  plaintiff can establish one of these three circumstances, he must
7  then demonstrate that the municipal policy "caused" the
8  constitutional deprivation.  Id.  A municipal policy "causes"
9  injury where it is the "moving force" behind the violation.
10  Chew, 27 F.3d at 1444 (citing Monell, 436 U.S. at 690-91, 694).

11      Plaintiffs contend that city employees committed
12  constitutional violations pursuant to a formal governmental
13  policy or long standing practice of allowing excessive force by
14  officers.  The sole evidence that plaintiffs present to
15  demonstrate this formal practice is a policy manual which
16  provides that officers "should never use unnecessary force."
17  Plaintiffs argue that the use of the word "should" in the policy
18  manual gives officers the discretion to use excessive force.  The
19  court rejects plaintiffs' interpretation of the policy manual.  A
20  plain reading of this phrase provides that it is the policy of
21  the City of Fairfield to prohibit the use of excessive force.
22  Therefore, plaintiffs' claims based upon a formal policy allowing
23  the use of excessive force are without merit.

24      Plaintiffs also contend that the city is liable because
25  Chief Gresham, as a final policy-making authority ratified the
26  officers' unconstitutional actions.  Because, as discussed above,
27  plaintiffs have not demonstrated that Gresham ratified or
28  /////

1  condoned the officers' action, the city cannot be liable on this
2  basis.

3       Because plaintiffs have failed to present evidence creating
4  a triable issue of fact regarding municipal liability under §
5  1983 for the City of Fairfield, defendants' motion for summary
6  judgment is GRANTED.

7  **B.   State Law Claims**

8       **1.   Assault and Battery**

9       Plaintiff Marques Phillips alleges claims of assault and
10 battery against the defendant officers.  California assault and
11 battery claims are the counterpart to plaintiff's federal claims
12 brought under § 1983.  See Edson v. City of Anaheim, 63 Cal. App.
13 4th 1269, 1274 (1988).  To sustain a claim of assault and battery
14 against a police officer under state law, plaintiffs must provide
15 evidence that the officer used unreasonable force.  Id.[9]; See
16 Johnson v. County of Los Angeles, 340 F.3d 787, 794 (9th Cir.
17 2003).  For the reasons provided in the court's analysis of
18 Marques Phillips' § 1983 claims against defendant officers,
19 plaintiffs have raised a triable issue of fact that the defendant
20 officers used unreasonable force.

21      Defendants argue that defendant officers are immune from
22 plaintiff's state law claims of assault and battery pursuant to
23 California Government Code § 821.6.  Section 821.6 provides that

24          [a] public employee is not liable for injury caused by
            his instituting or prosecuting any judicial
25          administrative proceeding within the scope of his

26
           ――――――――――――
27          [9]   While the Edson court addressed only the state law
    claim of battery, the court's reasoning can be extended to apply
28  the same standard to the claim of assault.  See Johnson v. County
    of Los Angeles, 340 F.3d 787, 794 (9th Cir. 2003).

1   employment, even if he acts maliciously and without
2   probable cause.

3   This immunity extends to actions taken in preparation for formal
4   proceedings, including investigations.  Amylou R. v. County of
5   Riverside, 28 Cal. App. 4th 1205, 1209-10 (1994).  The immunity
6   applies not only to injuries to the target of the judicial or
7   administrative proceeding, but also to injuries suffered by
8   others, such as witnesses or victims.   Id.

9         Defendants argue that because Marques Phillips was arrested
10  during the officers' execution of a buy/bust operation, the
11  officers are immune pursuant to § 821.6.  Plaintiffs do not
12  dispute that defendant officers were public employees or that
13  they were acting within the scope of their employment; such
14  elements are prerequisites to their § 1983 claims.  However, the
15  conduct in this case was not incident to an investigation.
16  First, defendants assert that the officers were engaged in a *buy-*
17  *bust operation*, not an investigation in preparation for judicial
18  proceedings.  Second, defendants do not contend that Marques
19  Phillips was implicated or related to the buy/bust operation in
20  any way.  Plaintiff's only relation to the investigation was to
21  walk through the parking lot where defendant officers were.  This
22  case does not present the type of factual circumstances in which
23  § 821.6 has been held to apply.  See Karam v. City of Burbank,
24  352 F.3d 1188 (9th Cir. 2003); Baughman v. State of California,
25  38 Cal. App. 4th 182 (1995); Amylou R., 28 Cal. App. 4th 1205.

26        Therefore, because plaintiffs have presented evidence that
27  defendant officers used unreasonable force against Marques
28  Phillips, and because § 821.6 immunity does not apply,

31

defendants' motion for summary judgment regarding plaintiff's state law claims of assault and battery is DENIED.

### 2.   False Arrest and Imprisonment

Plaintiff Marques Phillips also claims that defendant officers are liable under state law for false arrest false imprisonment.  "[T]he basis for the tort of false imprisonment is the unlawful restraint of another's liberty."  Scofield v. Critical Air Medicine, Inc., 45 Cal. App. 4th 990, 1000 (1996). For the reasons provided in the court's analysis of Marques Phillips' § 1983 claims against defendant officers, plaintiffs have raised a triable issue of fact that the defendant officers lacked probable cause to arrest Marques Phillips.  Therefore, California Civil Code § 43.55, which provides immunity to officers who detains a suspect based upon probable cause that he committed a crime, is inapplicable.  Because the court has found the § 821.6 immunity is also inapplicable to this case,[10] defendants' motion for summary judgment regarding Marques Phillips' state law claims of false arrest and imprisonment is DENIED.

### 3.   *Respondeat Superior* Liability of the City

Plaintiffs claim that the city is liable under state law pursuant to the doctrine of *respondeat superior*.  Plaintiffs assert that the officers committed the alleged acts within the course and scope of their employment as police officers for the city.  Therefore, the city is vicariously liable.  Defendants

---

[10]   Further, § 821.6 does not provide immunity for claims of false imprisonment.  Amylou R., 28 Cal. App. 4th at 1211 n.2 (citing Sullivan c. County of Los Angeles, 12 Cal. 3d 710, 719-22 (1974).

1   move for summary judgment on the grounds that under Cal. Gov.

2   Code § 815.2(b), a public entity cannot be held liable for an

3   injury resulting from an act or omission of an employee of the

4   public entity where the employee is immune from liability.

5   Defendants assert that defendant officers are immune under §

6   821.6.

7       Cal. Gov. Code § 815.2(a) provides that a city is liable for

8   acts and omissions of its employees under the doctrine of

9   respondeat superior to the same extent as a private employer.

10  Unlike the rule against municipal liability under federal law set

11  out Monell, California imposes liability on municipalities under

12  the doctrine of *respondeat superior*.  Robinson, 278 F.3d at 1016.

13  Under California law, a city's immunity depends upon whether the

14  police officers are immune.  Id.

15      For the reasons provided in the court's analysis of Marques

16  Phillips' § 1983 claims against defendant officers, plaintiffs

17  have raised a triable issue as to whether the police officers,

18  while operating in the course of their employment, used

19  unreasonable force in the seizure and arrest of Marques Phillips.

20  Further, defendant officers are not immune under § 821.6.  Thus,

21  under Cal. Gov. Code § 815.2(a), liability may flow to the city

22  for defendant officers' actions toward Marques Phillips.

23  Accordingly, defendants' motion for summary judgment for the

24  *respondeat superior* claim brought by Marques Phillips is DENIED.

25  Because plaintiffs have failed to present evidence that creates a

26  triable issue of fact regarding an unreasonable search and

27  seizure of Cynthia Phillips, defendants' motion for summary

28  /////

judgment regarding the *respondeat superior* claim brought by Cynthia Phillips is GRANTED.

## CONCLUSION

Based on the foregoing analysis, the court makes the following orders:

A.   As to the claims brought by plaintiff Marques Phillips:

    1.   Defendant officer's motion for summary judgment is:

        (a)   DENIED as it applies to plaintiff's § 1983 claims based upon violations of his Fourth Amendment rights;

        (b)   GRANTED as it applies to plaintiff's § 1983 claims brought under all other bases;

        (c)   GRANTED as it applies to plaintiff's § 1981 claims;

        (d)   GRANTED as it applies to plaintiff's state law claims brought under Cal. Civ. Code § 51.7;

        (e)   GRANTED as it applies to plaintiff's state law claims brought under Cal. Civ. Code § 52.1;

        (f)   GRANTED as it applies to plaintiff's negligence claims;

        (g)   DENIED as it applies to plaintiff's assault and battery claims;

        (h)   DENIED as it applies to plaintiff's false arrest and imprisonment claims

    2.   Defendant Gresham's motion for summary judgment is:

        (a)   GRANTED as it applies to all of plaintiff's claims;

/////

34

3.  Defendant City of Fairfield's motion for summary judgment is:

    (a)  GRANTED as it applies to plaintiff's § 1983 claims;

    (b)  GRANTED as it applies to plaintiff's claims of negligent selection, training, retention, supervision, investigation, and discipline.

    (c)  DENIED as it applies to plaintiff's *respondeat superior* claims;

B.  As to the claims brought by plaintiff Cynthia Phillips:

1.  Defendant officer's motion for summary judgment is:

    (a)  GRANTED as it applies to all of plaintiff's claims addressed in the motion for summary judgment;[11]

2.  Defendant Gresham's motion for summary judgment is:

    (a)  GRANTED as it applies to all of plaintiff's claims;

3.  Defendant City of Fairfield's motion for summary judgment is:

    (a)  GRANTED as it applies to all of plaintiff's claims.


IT IS SO ORDERED.

DATED: December 21, 2005

/s/ Frank C. Damrell Jr.
FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE

---

[11]  Defendants did not address plaintiffs' claim for intentional infliction of emotional distress in their motion for summary judgment.  Therefore, the court does not address this claim.