Kimberly E. Colwell, Esq. (SBN: 127604)
kcolwell@meyersnave.com
Jennifer C. Addams, Esq. (SBN: 209355)
jaddams@meyersnave.com
MEYERS, NAVE, RIBACK, SILVER & WILSON
555 12th Street, Suite 1500
Oakland, CA  94607
Telephone: (510) 808-2000
Facsimile: (510) 444-1108

Attorneys for Defendants CITY OF FAIRFIELD,
POLICE OFFICERS MARK SCHRAER, CHAD TIGERT,
STEVEN TROJANOWSKI, JR., STEPHEN RUIZ, TROY OVIATT,
FRANCO CESAR and CADE BECKWITH

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARQUES PHILLIPS and CYNTHIA M. PHILLIPS,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF FAIRFIELD, CHIEF OF POLICE WILLIAM GRESHAM, OFFICER MARK SCHRAER, OFFICER CHAD TIGERT, OFFICER STEVE TROJANOWSKI, JR., OFFICER MIKE BEATTY, OFFICER MATTHEW THOMAS, OFFICER STEPHEN RUIZ, OFFICER TROY OVIATT, OFFICER JEREMY NIPPER, OFFICER FRANCO CESAR, OFFICER CADE BECKWITH, and DOES 1 through 13,<br><br>    Defendants. | Case No:  CIV-S-04-0377 FCD PAN (JFM)<br><br>**DEFENDANTS CITY OF FAIRFIELD'S, OFFICER MARK SCHRAER'S, OFFICER CHAD TIGERT'S, OFFICER STEVE TROJANOWSKI, JR.'S, OFFICER STEPHEN RUIZ'S, OFFICER TROY OVIATT'S, OFFICER FRANCO CESAR'S AND OFFICER CADE BECKWITH'S TRIAL BRIEF**<br><br>DATE: October 31, 2006<br>TIME: 10:00am<br>DEPT: Courtroom 2<br>JUDGE: Frank C. Damrell, Jr.<br><br>Complaint Filed (State Court): February 23, 2004<br>Trial Date: October 31, 2006 |

1    Defendants CITY OF FAIRFIELD, POLICE OFFICERS MARK SCHRAER, CHAD

2  TIGERT, STEVEN TROJANOWSKI, JR., STEPHEN RUIZ, TROY OVIATT, FRANCO CESAR

3  and CADE BECKWITH hereby submit this Trial Brief.

4  **STATEMENT OF FACTS**

5    Marques Phillips and Cynthia Phillips ("plaintiffs") have filed this lawsuit against the City of

6  Fairfield, Fairfield Police Chief William Gresham and Fairfield Police Officers Mark Schraer, Chad

7  Tigert, Steven Trojanowski, Jr., Mike Beatty, Cade Beckwith, Franco Cesar, Matthew Thomas, Troy

8  Oviatt, Stephen Ruiz and Jeremy Nipper.  (First Amended Complaint.)  Mr. Phillips was arrested by

9  the individual defendant officers on the night of February 1, 2003.  (*Id*. (from First Amended

10  Complaint).)  Mr. Phillips contends that this arrest was unlawful and Mr. Phillips and Cynthia Phillips

11  both contend that their civil rights were violated.  (*Id*. (from First Amended Complaint).)

12    Defendants filed a motion for summary judgment, the outcome of which eliminated all claims

13  against Fairfield Police Chief William Gresham.  In addition, all of Cynthia Phillips' claims were

14  eliminated except for her Intentional Infliction of Emotional Distress Claim.

15    Plaintiffs have dismissed defendants Officer Mike Beatty, Officer Matthew Thomas and

16  Officer Jeremy Nipper.

17  Two Prior Arrests

18    Mr. Phillips had been arrested by the Fairfield Police Department on several previous occasions

19  for drug possession.  In fact, on the night before the incident which gives rise to this lawsuit (January

20  31, 2003), Mr. Phillips was "dipping."  Mr. Phillips described this as "bouncing" his automobile and

21  randomly driving around the parking lot at a local 7-11 in Fairfield, California.  Mr. Phillips had four

22  other people in his car.  Fairfield Police Officer Steven Trojanowski, Jr. stopped Mr. Phillips for

23  reckless driving.  A bag of marijuana was discovered in the vehicle and Officer Trojanowski arrested

24  Mr. Phillips.

25    The next day was February 1, 2003 and Mr. Phillips was stopped by police again.  This time

26  Fairfield Police officers were conducting an undercover "buy/bust" operation.  A plain clothed officer

27  from a nearby jurisdiction, Officer Bragg, was acting as a drug buyer while Fairfield Officer Beckwith

28  watched nearby.  Mr. Phillips pulled up in a green Chevy Blazer and offered Officer Bragg marijuana

for sale.  The officer agreed and Mr. Phillips left to get the drugs.  Officer Bragg reported the license plate number to Officer Beckwith.

While Mr. Phillips was gone, Officer Bragg saw another suspected drug deal happen.  The seller of the drugs then sold base cocaine to Officer Bragg.   Officer Beckwith moved in to the area to assist with the arrest.  As he moved in he saw the Green Chevy Blazer, with the license plates that matched the ones Officer Bragg had reported, parked directly in front of where the officers were taking the suspect into custody.  Mr. Phillips got out of the driver's seat.

After taking the cocaine seller into custody, Officer Beckwith saw Mr. Phillips again and had other arrest team officers detain him.  He took a photograph of Mr. Phillips and Officer Bragg positively identified him as the man who was driving the green Chevy Blazer and who tried to sell him marijuana. Mr. Phillips was arrested for loitering in the area for the purpose of engaging in narcotic activity.  He was given a citation and released.

The Subject Incident

At approximately 8:00 p.m. that same night, members of the Fairfield Police Department's Crime Suppression Unit and Narcotics Team were conducting another undercover narcotics purchases in areas of the City known for a high level of narcotics sales.  These operations were called "buy/bust" operations and considered very dangerous by the Police Department.  One of these operations was happening in the parking lot located at North Texas and East Tabor Streets.  This area is notorious for its high level of narcotics trafficking.  The City receives calls on almost a daily basis from shop owners and citizens regarding street level narcotic sales in this area.

On the evening in question, Officer Steven Trojanowski, Jr., who was part of the Crime Suppression Unit and Narcotics Team, had been assigned to do advance work in the area.  Officer Trojanowski drove to the area and parked in the parking lot of 1972 North Texas Street near both a Shell Station and the Jack-in-the-Box.  Undercover officers would then later be sent in to attempt to purchase narcotics.  Members of the Crime Suppression Unit and Narcotics Team that were taking part in the operation, in various capacities were Officer Mike Beatty, Officer Cade Beckwith, Officer Franco Cesar, Officer Troy Oviatt, Officer Matthew Thomas and Officer Stephen Ruiz.   Officer Jeremy Nipper was stationed outside the immediate area in the surveillance van.  As Officer

Trojanowski was driving to the area, the Fairfield Police Department received a call regarding a male possessing a firearm who was loitering in the Jack-in-the-Box parking lot in the vicinity of the strip mall located at 1972 E. Texas Street. Officer Trojanowski heard this dispatch and was warned of the danger.

At approximately 8:10 p.m., Officer Trojanowski saw Mr. Phillips walk from the Shell Station to the Liquor Tree liquor store. Officer Trojanowski recognized Mr. Phillips from the stop the day before. As Mr. Phillips walked by Officer Trojanowski's car, he looked at Officer Trojanowski and recognized him as well. Mr. Phillips pointed at Officer Trojanowski and yelled to the other people in the parking lot, "5-0!" "5-0" is a term that is used to alert people to the presence of police officers (taken from the 1970's police show, "Hawaii 5-0"). Other people loitering outside the Liquor Tree liquor store immediately left the scene. Officer Trojanowski also saw three other vehicles from the parking lot leave abruptly after Mr. Phillips yelled out "5-0."

Mr. Phillips then walked across East Tabor Avenue to the Wok-N-Roll restaurant on the corner (now called Bamboo Garden). Mr. Phillips loitered in the parking lot for more than five minutes. He then walked to the front of the restaurant and again repeatedly yelled out, "5-0," pointing at Officer Trojanowski.

Mr. Phillips crossed East Tabor Avenue again and returned to the parking lot in front of the Liquor Tree. He stood there for four to five more minutes without entering any of the businesses. Just as the undercover Fairfield Police officer was approaching the area to begin the buy/bust operation, Mr. Phillips then walked across the parking lot and stood directly in front of the front driver's side door of Officer Trojanowski's unmarked car. He pointed his right index finger at the officer and yelled, "5-0! 5-0! Some mother-fucking 5-0!"

Officer Trojanowski recalled from personal experience that Mr. Phillips had threatened violence against the police during prior arrests and was unnerved by the encounter. Officer Trojanowski radioed in his observations to Sergeant Schraer, head of the Crime Suppression Unit, and told him he believed his undercover status had been completely jeopardized. He also told Sergeant Schraer that Mr. Phillips had been loitering in the area in violation of Health and Safety Code § 11532. Mr. Phillips' actions seemed deliberately fashioned to undermine the officers' buy/bust operation.

Sergeant Schraer ordered that Mr. Phillips be arrested.  Because of Mr. Phillips' prior police contacts and threats of violence, Officer Trojanowski decided to execute a "high risk stop."  A high-risk stop requires police to have their guns drawn as they order a suspect to get down on the ground.  This is done to ensure immediate compliance and to discourage active and potentially life-threatening resistance.  The procedure ensures that the safety of the arresting officer is not compromised.  Swift compliance ensures that the safety of innocent bystanders is not compromised.  The procedure also minimizes danger to the suspect unless he responds with deadly force.

Mr. Phillips began walking west, between the Shell Station and the Jack-in-the-Box restaurant.  Officer Trojanowski approached him in his unmarked car from behind.  He stopped his car, got out, drew his gun and ordered Mr. Phillips to the ground.  Mr. Phillips began yelling insults at Officer Trojanowski but dropped to his knees.  Officer Trojanowski told him to lie flat all the way down on the ground as he walked toward him.  Mr. Phillips continued yelling but did not go down to the ground.  Officer Trojanowski by this time was directly behind Mr. Phillips.  He put his foot in Mr. Phillips' back and pushed him to the ground.  Mr. Phillips began yelling, "See Mama?  I told you!"  Officer Trojanowski did not know why he was yelling this.

At this point, Officer Tigert had turned into the parking lot in front of Mr. Phillips and gotten out of his car.  Both officers approached Mr. Phillips (Officer Trojanowski had re-holstered his gun as soon as Mr. Phillips was on the ground).  Other Fairfield Police Department officers who were engaged in the buy/bust operation and had been waiting out of site of the parking lot also arrived.

When Officer Trojanowski tried to handcuff Mr. Phillips, he began to thrash around.  It made it difficult to secure him in the handcuffs.  Due to Mr. Phillips' large size and resistance it was hard to gain control of him even after the handcuffs were applied but Sergeant Tigert assisted him.  After he was able to put the cuffs on, Officer Trojanowski stepped back and allowed Sergeant Schraer and Detective Beckwith to take control of Mr. Phillips.  The Officers lifted him to his feet but he continued to kick and struggle.  Because he was struggling with them, Sergeant Schraer ordered that Mr. Phillips be placed back down on the ground and ripp restraints applied.  (RIPP restraints secure the legs so that the suspect cannot kick.)  Mr. Phillips was then walked to a police car.

///

About this time, Sergeant Schraer saw that a woman had gotten out of her car and was yelling at the officers during the arrest. He went over to her and attempted to speak with her but was unable to because she continued to yell. He realized it was Mr. Phillips' mother. He went back to help get the scene under control.

For his safety in order to remove him from the crowd that was gathering, the transporting officers took Mr. Phillips across the street to the Food Mart parking lot in front of Hollywood Video. They took him out of the car and had him stand up. They patted him down, lifted his shirt and took off his shoes and socks looking for weapons and contraband. They then transported him to the County Jail. A booking photograph was taken of Mr. Phillips. In the photograph he is wearing a clean, white shirt and shows no sign of injury. Cynthia and Tommie Phillips, Mr. Phillips' parents, took a photo of Mr. Phillips as he left the County Jail. He has an abrasion on his left shoulder and no other signs of injury.

Officer Cesar, Officer Thomas, Officer Beatty, Officer Beckwith, Officer Ruiz and Officer Oviatt all arrived after Mr. Phillips was on the ground. At the time of the incident, Officer Nipper was in the surveillance van heading in the opposite direction. Officer Cesar, Officer Thomas, Officer Beatty, Officer Oviatt and Officer Nipper never touched Mr. Phillips or Cynthia Phillips. Officer Oviatt was told he was the transporting officer but he does not remember the incident.

<u>Subsequent to the Subject Incident</u>

Mr. Phillips is claiming extensive physical and psychological damages from the February 1, 2003 incident. It is difficult to know, however, what damages occurred at this point in time as opposed to later when he was involved in potentially life-changing events.

On or about April 20, 2004, Mr. Phillips received a gunshot wound to the right thigh. On August 26, 2004 Mr. Phillips received a gunshot wound to the left buttock. Mr. Phillips has no idea who shot him but both times he was shot he was in the same area of town and accompanied by the same friend.

On July 2, 2005, Mr. Phillips was pulled over by Officers Piro and Bertsch due to an outstanding arrest warrant. Mr. Phillips was taken into custody and the car he was in was towed. While he was seated in the back of Officer Bertsch's patrol car, Mr. Phillips told the officer that he had

extensive personal knowledge of various Fairfield Police officers.  He said he knew their personal

vehicles and the areas in which they live.  He correctly described in detail the personal vehicles of at

least five Fairfield officers.  He also described an undercover vehicle, the officer that was assigned to

that vehicle and then said, "The best part is y'all can't do anything 'cause nothing I just said was

illegal."  He smiled as he told Officer Bertsch this information.

When at the Solano County Jail, Correctional Officer San Agustin asked Mr. Phillips standard

pre-medical questions.  While answering the questions Mr. Phillips stated he felt suicidal.  Officer San

Augustin placed Mr. Phillips in a safety cell and strip searched him.  During the strip search a portion

of a plastic baggy was seen hanging from Mr. Phillips' buttocks.  The baggy contained twenty-two

individually wrapped rocks of rock cocaine.  Mr. Phillips was also carrying $297.00 in cash.  Based on

the large amount of rock cocaine and the cash, Mr. Phillips was arrested and booked at the Solano

County Jail for his outstanding warrant, a violation of Health and Safety Code § 11351.5 – possession

of rock cocaine for sale, a violation of Health and Safety Code § 11352(a) – transportation of rock

cocaine and a violation of Penal Code § 4573 – bringing narcotics into a jail.

## ADMISSIONS AND STIPULATIONS

There are no additional admissions and stipulations not recited in the pretrial order.

## ANTICIPATED DISPUTES CONCERNING ADMISSIBILITY OF EVIDENCE

1. Plaintiffs' Exhibits 1-3 are photographs of such poor quality it is unknown what the photographs are attempting to depict.  Exhibit Number 2 is of poor quality and has an object in the corner that defendants are unsure what it is attempting to cover.

2. Plaintiffs' Exhibit 4 "Marques Phillips' shirt."  This is ambiguous, lacks foundation, there is a lack of chain of custody and there are foundational issues.  What white shirt is being presented and for what purpose?

3. Plaintiffs' Exhibit 5 has not been produced through initial disclosure, through any amended disclosure, or at deposition or in response to any discovery request.  Federal Rules of Civil Procedure Rule 26(e) states that a party has a duty to supplement any disclosure to include information acquired after the initial disclosure.  A party also must "supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some

material respect the information disclosed is incomplete or incorrect…"  (FRCP 26(e)(1).)
These documents are also inadmissible hearsay.

4.      Plaintiffs' Exhibits 6, 7, 8 and 9 are photographs that have either never been produced to
defendants or are inadmissible because plaintiffs have failed to produce clear copies of
these photographs to defendants despite requests to do so.  Any photographs that have not
been produced or that are the subject of the request by defendants to provide clearer copies
are thus inadmissible.

5.      Plaintiffs' Exhibit 10 is inadmissible hearsay pursuant to FRE 801.

6.      Plaintiffs' Exhibit 11 is an improperly redacted, seemingly incomplete police report.  This
is ambiguous, lacks foundation, there is a lack of chain of custody, there are foundational
issues and it is inadmissible hearsay pursuant to FRE 801.

7.      Plaintiffs' Exhibit 12 is inadmissible hearsay pursuant to FRE 801.

8.      Plaintiffs' Exhibit 13, labeled "Wiretap Tapes and Transcripts" are incomplete and
inadmissible hearsay under FRE 801.

9.      Plaintiffs' Exhibit 14 is inadmissible hearsay pursuant to FRE 801.

10.     Plaintiffs' Exhibit 15 is inadmissible.  All internal affairs investigations and personnel files
of the officers are not admissible at trial because the only purpose for these records is to
show character and similar acts evidence prohibited by Federal Rules of Evidence 404(b).
If these records are introduced to support any *Monell* claims they are also not admissible.
Plaintiffs' *Monell* claim did not survive defendants' Motion for Summary Judgment and
thus, all records tending to show any action or inaction by the Fairfield Police Department
are irrelevant and improper hearsay.  This information also is more prejudicial than
probative and inadmissible under FRE 403 and would only serve to confuse the jury.
Finally, these records are also improper opinion evidence under FRE 701 because the
information contained within is not testified to under oath.

11.     Plaintiffs' Exhibit 16 is unintelligible and has never been produced as a disclosure, through
a supplemental disclosure, at the deposition of plaintiffs' expert Tommie Phillips or in
response to any discovery request.  This photograph is inadmissible and is hearsay under

FRE 801.  Defendants cannot tell what the picture is meant to depict and do not know its relevance.

12.   Plaintiffs' Exhibit 17 which may be Fairfield Police Department Procedures can only be offered at trial to show elements of a *Monell* claim.  Plaintiffs' *Monell* claim did not survive defendants' Motion for Summary Judgment.  These procedures are, thus, irrelevant.  Procedures from any other police department would be completely irrelevant.  This is also inadmissible hearsay under FRE 801.

13.   Plaintiffs' Exhibit 18 is inadmissible hearsay under FRE 801.

14.   Plaintiffs' Exhibit 19 has never been produced through initial disclosure, through any amended disclosure, or at deposition or in response to any discovery request.  Federal Rules of Civil Procedure Rule 26(e) states that a party has a duty to supplement any disclosure to include information acquired after the initial disclosure.  A party also must "supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect…"  (FRCP 26(e)(1).)  It is also redacted so it is not in a form in which it has been maintained and it is irrelevant because it is information that relates to charges that were accrued almost four years ago and never produced to the City.  This information is not in the spirit of discovery and the federal rules and not a fair surprise exhibit.  Defendants have never been able to question these documents in deposition or discovery and there is an absolute bar to allowing them to become evidence in this stage of litigation.

15.   Plaintiffs' Exhibit 20 has never been produced through initial disclosure, through any amended disclosure, or at deposition or in response to any discovery request.  Federal Rules of Civil Procedure Rule 26(e) states that a party has a duty to supplement any disclosure to include information acquired after the initial disclosure.  A party also must "supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect…"  (FRCP 26(e)(1).)  It is also redacted so it is not in a form in which it has been maintained and it is irrelevant because it is information that relates to charges that were accrued almost four years ago and

never produced to the City.  This information is not in the spirit of discovery and the federal rules and not a fair surprise exhibit.  Defendants have never been able to question these documents in deposition or discovery and there is an absolute bar to allowing them to become evidence in this stage of litigation.

16.    Plaintiffs have subpoenaed a report created by two Fairfield City Councilmembers Frank Kardos and John Mraz.  Defendants will file a motion in limine arguing that this report, and any testimony by the Councilmembers, is irrelevant because it has to do with, at most, a *Monell* claim against the City.  Because the plaintiffs' *Monell* claim did not survive defendants' Motion for Summary Judgment, all references to this report, or to what the City Councilmembers know, is irrelevant.

## SUMMARY OF POINTS OF LAW

A.    No constitutional violation occurred because probable cause existed for the arrest

B.    Because the officers were entitled to use force to gain control of Mr. Phillips there can be no constitutional liability against them for excessive force

C.    Even if the officers made a mistake regarding the amount of force required, they are still immune from Mr. Phillips' excessive force claim

D.    Mr. Phillips' Fourth Amendment Claims fail because the officers' actions were reasonable and they are entitled to qualified immunity

E.    Mr. Phillips' claims for Assault and Battery and False Imprisonment all fail because the officers' actions were reasonable

F.    The City is not liable under Respondeat Superior

G.    Cynthia Phillips' claim for Intentional Infliction of Emotional Distress fails because the officers' actions were not outrageous nor were they directed at Cynthia Phillips

## LEGAL ARGUMENTS

All claims that a peace officer improperly exercised his authority must be evaluated in the context of the Fourth Amendment.  As the Supreme Court has repeatedly counseled, "[t]he Framers considered the matter of pretrial derivations of liberty and drafted the Fourth Amendment to address it." (*Albright v. Oliver*, 510 U.S. 266, 274 (1994).)

Evaluated under the standards imposed by the Fourth Amendment, all actions toward Cynthia Phillips and Marques Phillips' detention, and the force used to affect it, were lawful.  The events that transpired did not happen in the way the plaintiffs claim they did.  All actions by the police were reasonable and there was no violation of any constitutional or other right.

**A.     No constitutional violation occurred because probable cause existed for the arrest**

"'In evaluating a custodial arrest executed by state officials, federal courts must determine the reasonableness of the arrest in reference to state law governing the arrest.'"  (*Pierce v. Multnomah County*, 76 F.3d 1032, 1038 (9th Cir. 1996) (quoting *United States v. Mota*, 982 F.2d 1384, 1388 (9th Cir. 1993)).)  Mr. Phillips was arrested pursuant to Health and Safety Code § 11532 which states:

> (a)   It is unlawful for any person to loiter in any public place in a manner and under circumstances manifesting the purpose and with the intent to commit an offense…

> (b)   Among the circumstances that may be considered in determining whether a person has the requisite intent to engage in drug related activity are that the person:

> …(10) Has engaged, within six months prior to the date of arrest under this section, in any behavior described in this subsection… or in any other behavior indicative of illegal drug-related activity.

> (c)   The list of circumstances set forth in subdivision (b) is not exclusive.  The circumstances set forth in subdivision (b) should be considered particularly salient if they occur in an area that is known for unlawful drug use and trafficking…  Any other relevant circumstances may be considered in determining whether a person has the requisite intent…

Probable cause has been defined by case law.  In *Agar v. Superior Court*, 21 Cal.App.3d 24 (1971), the court discussed the establishment of probable cause for a warrantless arrest.  "In the typical case in which the court must decide the question of probable cause, there has been an arrest for a particular offense and the court need only determine from the facts known by the officer, that the officer's belief was reasonable."  (*Agar*, 21 Cal.App.3d at 29.)  A California case, similar to this one, set forth some guidelines to consider when establishing if probable cause existed.

In *People v. Guajardo*, 23 Cal.App.4th 1738 (1994), a drug case, the court recognized that there is no exact formula to determine whether there is probable cause for arrest, and considered the totality of the circumstances, including (a) the officer's experience, (b) the officer's prior contacts with the suspect, (c) the officer's awareness that the area was known for street drug transactions, (d) the defendant's conduct, (e) the act of catching an object given or received by the defendant and (f) any indication of consciousness of guilt.

Applying the totality of the circumstances as set forth by *Guajardo* and Health and Safety Code § 11532 then, there was probable cause.  The Fairfield Police Department had many prior contacts with Mr. Phillips.  In fact, he had been arrested for drug related crimes two times in the 24 hour period prior to the incident.  Officer Trojanowski had arrested Mr. Phillips in the past and thus was well aware of those contacts.  He remembered Mr. Phillips threatening violence in the past.  Sergeant Schraer was also well aware of Mr. Phillips' contacts with police.  Sergeant Schraer was in charge of the Crime Suppression Unit, a unit of Fairfield Police that were participating in a dangerous buy/bust drug operation that night in an area known for high crime and high drug trafficking.  The officers had just received word that their dangerous operation was even more dangerous because of a report of a person in the immediate area who was carrying a weapon.  Mr. Phillips pointed and yelled at Officer Trojanowski, identifying him as a police officer to all the people in the area.  In Officer Trojanowski's mind Mr. Phillips' actions seemed deliberately fashioned to undermine the officers' operation.  Officer Trojanowski had probable cause to decide to detain Mr. Phillips, Sergeant Schraer had probable cause to order Mr. Phillips arrested and the officers had probable cause to carry out that order.

As stated in *Pierce,* 76 F.3d at 1038, if we consider the state law governing the arrest of Mr. Phillips, Sergeant Schraer's, Officer Trojanowski's, Officer Tigert's, Officer Beckwith's, Officer Cesar's, Officer Oviatt's and Officer Ruiz's beliefs regarding arresting Mr. Phillips were reasonable.  They are also reasonable under the federal law.  There was probable cause to arrest Mr. Phillips, no constitutional violation occurred, and this part of Mr. Phillips' claim must fail.

///

///

///

**B.    Because the officers were entitled to use force to gain control of Mr. Phillips there can be no constitutional liability against them for excessive force**

Mr. Phillips' claim of excessive force fails as well.  Here, Mr. Phillips complains about being taken to the ground by Officers Trojanowski, Tigert and other officers and then handcuffed.  The first issue, then, is that the excessive force claim clearly cannot apply to the conduct of Sergeant Schraer because he did not ever touch Mr. Phillips.  Thus, this action against Sergeant Schraer fails.  Similarly, Officer Cesar and Officer Oviatt did not touch Mr. Phillips either and thus his claims against them fail as well.

Then, Officers Trojanowski, Jr. and Tigert did not use excessive force when they took Mr. Phillips to the ground because the minimal amount of force used to overcome his apparent resistance was objectively reasonable.  (*Graham v. Connor*, 490 U.S. 386, 395-397 (1989).)  Similarly, Officer Beckwith's actions of helping Mr. Phillips to the police car and Officer Ruiz's actions of placing RIPP restraints on Mr. Phillips were a reasonable, minimal use of force.  Once again in evaluating the officers' use of force, the Court must evaluate the totality of the circumstances and the facts then available to the officer when he found it necessary to take Mr. Phillips to the ground and take him into custody.  (*Graham*, 490 U.S. at 395.)

In evaluating those facts the court must be guided by case law interpreting the reasonableness standard of the Fourth Amendment.  Here, as the Supreme Court has often repeated the actions of law enforcement officers may not be judged from the luxury of hindsight.

> [T]he right to make an arrest or investigatory stop carries with it the right to use some degree of physical coercion or threat thereof to effect it . . . The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight

> The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation. [T]he "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. (*Graham v. Connor*, 490 U.S. 386, 395-397 (1989) (emphasis added); *Saman v. Robbins*, 173 F.3d 1150 (9th Cir. 1999).)

Under *Graham*, the court must avoid substituting its personal notions of proper police procedure for the instantaneous decision of the officer at the scene. "We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes 'reasonable' action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure." (*Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992), *cert. denied*, 504 U.S. 915 (1992).) "The court's focus should be on the circumstances at the moment force was used and on the fact that officers on the beat are not often afforded the luxury of armchair reflection." (*Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996), *cert. denied*, 521 U.S. 1120, 117 S.Ct. 2512 (1997).)

There can be no dispute that under the facts known to Officers Trojanowski, Tigert, Beckwith, Cesar, Ruiz and Oviatt at the time, their actions were reasoned, deliberate and appropriate. Based on the undisputed and objective facts then known to Officers Trojanowski, Tigert, Ruiz and Beckwith, Mr. Phillips appeared to be resisting a lawful detention. The officers had just received word from dispatch that there was an armed man in the parking lot where they were to conduct a dangerous buy/bust operation. Mr. Phillips was known to the Fairfield Police and Officer Trojanowski believed he had threatened violence on prior occasions.

Faced with a reasonably perceived danger to himself, his fellow officers and the public, Officer Trojanowski's mild application of force – placing a foot on Mr. Phillips' upper back to get him to go all the way to the ground was objectively reasonable as a matter of law. (*Saucier v. Katz*, 533 U.S. 194 (2001).) The application of force during the course of an arrest is not "unreasonable where the force is justified by concern for the safety of the officer." (*Pellegrino v. U.S.*, 73 F.3d 934, 936 (9th Cir. 1996).) Officer Tigert's use of force – applying handcuffs or even Officer Ruiz's application of RIPP restraints when Mr. Phillips began kicking his legs – was also objectively reasonable.

In addition, force can not be "excessive" as a matter of law where the suspect is not harmed in the altercation. (*Walker v. Benter*, 41 F.Supp.2d 1067, 1074-1075 (C.D. Cal. 1999); *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2160 (2001); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (2000).) Mr. Phillips has not provided any evidence that he was harmed. Mr. Phillips provided photographs he states were taken immediately after the incident. The photographs simply do

not show injuries to Mr. Phillips that are consistent with his account of the incident.  Not only are there no visible bruises, abrasions, or cuts on his face that would be consistent with his account of being beaten by six officers, he is wearing a white shirt with not a single trace of blood on it.  The additional photographs of Mr. Phillips also do not show any bruising that could have developed nor cuts on his face.  He has provided pictures of an abrasion to his shoulder which could have come from the asphalt surface of the parking lot, but certainly no injuries that would be expected from the melee Mr. Phillips is alleging happened.  In addition, his identification photograph, taken at the jail immediately after the accident, shows no sign of injuries to his face and no blood or even much dirt on his white shirt.

In *Walker*, 41 F.Supp.2d at 1074-1075, the plaintiff sued for excessive force following an arrest for a traffic violation.  The *Walker* Court dismissed plaintiff's claim on summary judgment because frisking, handcuffing, and detaining a suspect could not amount to excessive force.  (*Id.*)  Moreover, as in the case at bar, the Walker plaintiff "presented no evidence of medical diagnosis or care relating to . . . any . . . injuries."  (*Id.*)

In *Saucier*, the plaintiff sued for excessive force after military police threw him in a van.  In granting the police-officer defendant's motion for summary judgment, the Supreme Court found that the amount of force used to subdue the plaintiff was reasonable as a matter of law, stating that "our conclusion is confirmed by the uncontested fact that the force was not so excessive that respondent suffered hurt or injury."  (*Saucier*, 121 S.Ct. at 2159.)

Here, as in *Walker*, Mr. Phillips has offered no evidence that these actions caused him anything more than minimal physical discomfort and scraping.  He has no medical diagnosis and all of his medical records record his accusations against police, but fail to show any physical problems resulting from the alleged "beating."  The minimal amount of force utilized by Officers Trojanowski and Tigert was reasonable and justified under the totality of the circumstances facing the officers at the time they attempted to detain Mr. Phillips.  Constitutional liability can not be predicated on this cause of action.

**C.**      **Even if the officers made a mistake regarding the amount of force required, they are still immune from Mr. Phillips' excessive force claim**

As the *Saucier* Court pointed out,

> [t]he concern of the immunity inquiry is to acknowledge that mistakes can be made as to the legal constraints on particular police conduct.  It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal under these circumstances.  If the officer's mistake as to what the law requires is reasonable, however the officer is entitled to the immunity defense.  (*Id*. at 205.)

Under *Saucier's* second prong (discussed in more detail below) the Court's focus is on whether there is a clearly established rule, which mirrors the facts of the dispute at bar, so that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." (*Id*. at 205-206.)  "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  (*Hunter v. Bryant*, 502 U.S. 224, 227 116 L.Ed.2d 589 (1991); *Anderson v. Creighton*, 483 U.S. 635, 638, 97 L.Ed.2d 523 (1987); *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1099 (9th Cir. 1995).)  If no well established precedent with a similar fact pattern exists, sufficient to put an officer on notice that the conduct he is pursuing is unlawful, then qualified immunity shields the officer from suit.  (*Hunter*, 502 U.S. at 227.)

Here, not only could no officer have been put on notice that his conduct was unlawful when they took control of Mr. Phillips but the officers' actions in the case at bar were consistent with clearly established state law.  The officers had reliable information that there was a person in the area who had a weapon and they knew this was a high crime area.  It was reasonable to suspect that Marques Phillips could be that person.  Under the criteria to be considered under Health and Safety Code § 11532, it was reasonable that Officer Trojanowski to believe Mr. Phillips was in violation of the law.  Due to the fact that he might be armed and because of his prior threats of violence toward police, they had a right to draw their weapons and they had the right to order him down on the ground.  They had the right to handcuff him.  The techniques used to bring Mr. Phillips to the ground and apply handcuffs were perfectly acceptable and reasonable means of securing control.  When Mr. Phillips began kicking his legs, applying RIPP restraints to his ankles was an acceptable and reasonable means of securing control as well.

A reasonable officer in the same circumstances as Sergeant Schraer, Officer Tigert, Officer Trojanowski, Officer Beckwith, Officer Cesar, Officer Oviatt and Officer Ruiz could have believed their conduct to be lawful.  Their actions were not "plainly incompetent", nor did they "knowingly violate the law."  Thus, even if they were mistaken about the amount of force necessary to bring Mr. Phillips under control, Sergeant Schraer, Officer Tigert, Officer Trojanowski and all of the other officers are shielded from liability because they are entitled to qualified immunity.  In fact, all of Mr. Phillips' Fourth Amendment claims fail because of qualified immunity.

**D.    Mr. Phillips' Fourth Amendment claims fail because the officers are entitled to qualified immunity**

Qualified immunity is an affirmative defense against § 1983 claims.  Its purpose is to shield public officials from undue interference with their duties and from potentially disabling threats of liability.  The defense provides immunity from suit, not merely from liability.  Its purpose is to spare defendants the burden of going forward with trial.  (*Hunter v. Bryant*, 502 U.S. 224, 227, 116 L.Ed.2d 589 (1991).)

Mr. Phillips has not come forward with any specific evidence that no reasonable officer could have believed (as they did) that their actions were lawful.  (*Crawford El. v Britton*, 523 U.S. 574, 588 140 L.Ed.2d 759 (1998).)

In *Saucier*, the Supreme Court clarified the two-step evaluation for resolving claims of qualified immunity.  (*See Saucier*, 533 U.S. at 150.)  The analysis contains both a constitutional inquiry and an immunity inquiry.  For the constitutional inquiry, courts must determine this threshold issue: "based upon the facts taken in the light most favorable to the party asserting the injury, did the officer's conduct violate a constitutional right?"  (*Johnson*, 268 F.3d at 651; *Saucier*, 533 U.S. at 201.)

Here, Mr. Phillips has failed to meet his burden of demonstrating that the officers violated any of his constitutional rights.  Even if he ultimately comes forward with something that raises a disputed question on this issue, "the second inquiry [under *Saucier*] is whether the officer could nevertheless have reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right."  (*Id*.; *Saucier,* 533 U.S. at 201-205.)

///

Our threshold inquiry in this case is thus whether the officers' conduct violated a constitutional right; more specifically – under the Fourth Amendment was Mr. Phillips' arrest and the application of force used to affect it authorized under the totality of the circumstances?  It was.

Mr. Phillips was seen loitering in a high crime, high drug trafficking area.  He identified an undercover officer as he moved suspiciously about in the parking lot for over 10 minutes.  He was in violation of Health and Safety Code § 11532.  Fairfield officers were involved in a dangerous buy/bust operation and they were just told that there was an armed man in the area.  Officer Trojanowski recognized Mr. Phillips and remembered that he had made threats against police.  Officer Trojanowski believed Mr. Phillips recognized him and was attempting to interfere with the surveillance and under cover activity.  The officers had probable cause to arrest him.  Under the first prong of *Saucier's* qualified immunity analysis, his arrest was authorized and there can be no constitutional violation. (*Saucier*, 533 U.S. at 201.)

Now was the amount of force used to arrest Mr. Phillips appropriate under the circumstances?  Here our focus is on objective reasonableness and the various factors applicable under *Graham*.  We have established that taking Mr. Phillips to the ground was a rational response to a reasonable belief that he might be armed and was suspiciously loitering in a high crime and high drug trafficking area attempting to interfere with the officers.  This is not a jury question.  In the context of determining qualified immunity, according to *Saucier*, this evaluation is the exclusive province of the Court. (*Saucier*, 533 U.S. at 200-201.)

This brings us to the second prong of the qualified immunity analysis.  Here the question is not whether the detention and use of force was reasonable but whether any police officer could have thought their actions were appropriate.  As the *Saucier* Court pointed out,

> [t]he concern of the immunity inquiry is to acknowledge that mistakes can be made as to the legal constraints on particular police conduct.  It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. An officer might correctly perceive all the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal under these circumstances.  If the officer's mistake as to what the law requires is reasonable, however the officer is entitled to the immunity defense.  (*Id*. at 205.)

Under *Saucier's* second prong the Court's focus is on whether there is a clearly established rule, which mirrors the facts of the dispute at bar, so that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." (*Id*. at 205-206.) "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." (*Hunter*, 502 U.S. at 227; *Anderson v*. Creighton, 483 U.S. 635, 638 (1987); *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1099 (9th Cir. 1995).)  If no well established precedent with a similar fact pattern exists, sufficient to put an officer on notice that the conduct he is pursuing is unlawful, then qualified immunity shields the officer from suit. (*Id*.)

Here, not only could no officer have been put on notice that his conduct was unlawful when they first observed Mr. Phillips, but the officers' actions in the case at bar were consistent with clearly established law.  The officers had probable cause to arrest Mr. Phillips because he was in violation of Health and Safety Code § 11532 by walking around and loitering for over 10 minutes in the parking lot where drug traffic was common.  Officer Trojanowski had the right to take him to the ground when Mr. Phillips refused to follow his orders.  Officer Tigert had the right to handcuff him and Officer Ruiz had the right to apply RIPP restraints (when Mr. Phillips started kicking his legs) in order to gain control of Mr. Phillips or to order other officers to apply the restraints.

It is undisputed that Mr. Phillips suffered only minimal injuries from his altercation.  One of the factors the *Saucier* Court relied on was that Katz offered no evidence that he suffered from residual injuries following the altercation.  (*Id*. at 208.)  The facts are the same here.  Like the *Saucier* defendant, the defendants in this action are entitled to qualified immunity and this suit should be dismissed.

We return again to the reasonableness factor.  A reasonable officer in the same circumstances as Sergeant Schraer, Officer Tigert, Officer Trojanowski, Officer Beckwith, Officer Cesar, Officer Oviatt, and Officer Ruiz could have believed their conduct to be lawful.  Again, their actions were not "plainly incompetent," nor did they "knowingly violate the law."  Sergeant Schraer, Officer Tigert, Officer Trojanowski, Officer Beckwith, Officer Cesar, Officer Oviatt and Officer Ruiz are entitled to qualified immunity.

**E.      Mr. Phillips' claims for Assault and Battery, False Arrest and False Imprisonment all fail because the officer's actions were reasonable**

Where police officer misconduct is the focus of a lawsuit, California law works in tandem with the Federal Constitution.  The legality of a peace officers' stop and detention of a suspect is determined by the touchstone of Fourth Amendment "reasonableness."  (*Edson v. City of Anaheim,* 63 Cal.App.4th 1269, 1272-1273 (1998), *citing* Pen. Code Section 835(a); *Martinez v. County of Los Angeles,* 47 Cal.App.4th 334, 349 (1996).)

Thus, a plaintiff's cause of action for assault and battery fails "under California law unless the Plaintiff proves that an officer used unreasonable force against him to make a lawful arrest or detention."  (*Saman v. Robbins,* 173 F.3d 1150, 1157 note 6 (9th Cir. 1999).)  The standard of reasonableness under California law is identical to that evaluated under the Fourth Amendment.  (*Saman*, 173 F.3d at 1157, *citing Edson*, 63 Cal.App.4th at 1273.)  Where an officer's use of force is objectively reasonable, it is insufficient as a matter of law to support a claim of assault or battery under state law.  (*Saman,* 173 F.3d at 1156-1157 and note 6.)

A claim for False Arrest or Imprisonment under California law is also evaluated according to the guidelines set out by judicial decisions interpreting the Fourth Amendment.  Where an officer detains a suspect based on probable cause that he committed a crime, that officer is immune from liability for false arrest.  *See* California Civil Code § 43.55 (Peace Officer; Immunity for False Arrest); *see also Lopez v. City of Oxnard*, 207 Cal.App.3d 1 (1989).

"An officer is not liable for false imprisonment for the arrest without a warrant of a person whom he has reasonable grounds to believe is guilty of a crime."  (*Allen v. McCoy*, 135 Cal.App. 500, 507-508 (1933).)  All of Mr. Phillips' state claims against the officers are barred to the extent their conduct is deemed reasonable.  Unless Mr. Phillips can show that the officers acted unreasonably in arresting Mr. Phillips and taking him down, based on the beliefs of the officers that he was loitering, interfering with a police operation and that he might be armed, defendants are not liable.  As demonstrated above in the factual scenario, all of the officers' actions were reasonable.  These claims must also be dismissed.  And all of Mr. Phillips' claims, whether state or federal, rely for their validity on a finding that the police officers acted wrongfully.  If they are not liable then the City cannot be

held liable under any state law theory of relief.  (*See* California Government Code § 815.2 (Public Entity or Supervisor May Not Be Held Liable Where Employee is not Liable).)

**F.    The City is not liable under Respondeat Superior**

As has been pointed out, except as provided by statute, a public entity cannot be held liable for a personal injury.  One statute that does impose tort liability on a public entity is Government Code § 815.2.  Government Code § 815.2, subdivision (a) provides,

> A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

Public employees are liable for their acts or omissions to the same extent as private persons. Government Code § 820, subdivision (a).

Underlying all of the Phillips' claims is the premise that the actions of the officers were wrongful.  If they are immune then so similarly is the City of Fairfield.

**1.    Because Sergeant Schraer's and Officers Tigert's, Trojanowski's, Beckwith's, Cesar's, Oviatt's and Ruiz's and arrest of Mr. Phillips occurred while they were conducting a lawful drug crime operation, their actions are cloaked with immunity under Government Code § 821.6 and the City cannot be held liable**

Government Code § 815.2, subdivision (a) imposes *respondeat superior* liability on public entities.  Subdivision (b), however, of this very same statute provides:

> Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.

Thus, if an employee engages in conduct for which he is immune, so too is the city that employs him.  All of plaintiffs' claims fail because they are based on the alleged misconduct of Officers Trojanowski, Tigert, Beckwith, Cesar, Oviatt and Ruiz and Sergeant Schraer.  This immunity arises because when the officers stopped and arrested Mr. Phillips they were acting with probable cause.  Government Code § 821.6 provides that:

///

> A public employee is not liable for injury cause by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause.

The elements of this immunity were summarized in *Amylou R. v. County of Riverside*, 28 Cal.App.4th 1205 (1994).

In *Amylou R.,* a fifteen year old rape victim sued the county on various causes of action including intentional and negligent infliction of emotional distress in connection with the investigation of the crime. Amylou and her friend had been driven to a remote area in the county by a stranger. The stranger then raped and murdered Amylou's friend and raped and sodomized Amylou. She escaped and called the police. (*Amylou R.*, 28 Cal.App.4th at 1208.)

Amylou brought suit against the county arguing that the investigating officers had abused her and treated her outrageously. For instance, when she expressed fear about returning to the scene, Amylou contended that the officers had stated, "Your friend died for you. The least you could do is show us where the body is." (*Id*. at 1210.) The next day detectives stormed into her house uninvited while she was trying to sleep. They accused her of lying and told her they would tell all her friends she made the story up. When she refused to speak any further to the officers, they spread rumors among her friends and family that she was involved in the crimes. All of the officers' actions took place before the evidence or the murderer had been secured. (*Id*. at 1210-1211.) She later sued the officers' employer under various tort-based theories. Still, the court found the county immune.

The court stated, "Pursuant to [Government Code] sections 815.2 and 821.6, the County is immune from liability for the actions or omissions of the investigating officers if: (1) the officers were employees of the county; (2) [the Plaintiff's] injuries were caused by acts committed by the officers to institute or prosecute a judicial or administrative proceeding; and (3) the conduct of the officers while instituting or prosecuting the proceeding was within the scope of their employment." (*Id*. at 1209.)

After finding that the investigating officers were employees of the county and were acting within the scope of their employment, the court said there was:

///

///

///

> Little doubt that the actions complained of were committed in the course of the institution and prosecution of a judicial proceeding.  Section 821.6 is not limited to the act of filing a criminal complaint.  Instead, it also extends to actions taken in preparation for formal proceedings.  Because investigation is 'an essential step' toward the institution of formal proceedings, it is also cloaked with immunity.  [Citations.]  (*Id*. at 1209-1210.)

This immunity has been applied to shield police officers from a number of different causes of action including libel, slander, negligence and invasion of privacy.  See *Cappuccio, Inc. v. Harmon,* 208 Cal.App.3d 1496 (1989) (libel); *Johnson v. City of Pacifica*, 4 Cal.App.3d 82 (1970) (negligence); *Baughman v. State of California,* 38 Cal.App.4th 182, 192 (1995) (invasion of privacy).

As the *Baughman* court stated, "[u]nder Government Code § 821.6, [the police] officers' actions during [an] investigation were cloaked with immunity even if they had acted negligently, maliciously or without probable cause in carrying out their duties."  (*Baughman*, 38 Cal.App.4th at 192.)

In *Baughman*, plaintiff alleged that college police officers wrongfully destroyed and damaged costly computer equipment while executing a search warrant at his business office.  He sued based on intentional and negligent infliction of emotional distress and invasion of privacy.  The court found § 821.6 applicable, and barred liability because the wrongful acts occurred while investigating suspected crimes.  (*Baughman*, 38 Cal.App.4th at pp. 192-193.)

The public policy behind this immunity was best articulated by the court in *White v. Towers*, 37 Cal.2d 727, 729-730 (1951), in this language:

> When the duty to investigate crime and to institute criminal proceedings is lodged with any public officer, it is for the best interests of the community as a whole that he be protected from harassment in the performance of that duty.  The efficient functioning of our system of law enforcement is dependent largely upon the investigation of crime and the accusation of offenders by properly trained officers. A breakdown of this system at the investigative or accusatory level would wreak untold harm. 'Criminal law does not enforce itself. It demands the assistance of valid evidence and fearless officials to put it in execution.'

"In the end it is better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation."  (*Hardy v. Vial*, 48 Cal.2d 577, 583 (1957).)

*Amylou R.* and *Baughman* are representative examples.  The application of each, and of § 821.6 to this case, is inescapable.  Here, as in all of these cited cases, the Phillips' claimed injuries were incurred incident to a police investigation.

Fairfield Police lawfully arrested Mr. Phillips because he was seen loitering in a high crime area immediately after a report of an armed man in the area during a buy/bust operation.  The police had been in contact with Mr. Phillips many times before and reasonably effected a high risk arrest.  Like the plaintiffs in the cases discussed above, the officers were employed by the City and acting within the scope of their employment when they arrested Mr. Phillips.  If police officers who badgered, abused and threatened a fifteen year old rape victim were immune, then certainly Officers Trojanowski's, Tigert's, Ruiz's, Beckwith's and Sergeant Schraer's conduct must be insulated.  The remaining officers, Officers Cesar and Oviatt, who did not even touch Mr. Phillips, are immune.  Under § 821.6, even if one disagrees with their methods, even if their judgment is called into question and even if their conduct can be labeled outrageous and malicious, they cannot be held liable.  Because the officers are immune, the City too cannot be held liable.  And because this so-called abuse of investigatory powers lies at the root of all of the Phillips' state law claims against the City, the plaintiffs claims against the City fail.

**G.   Marques Phillips' claim for Intentional Infliction of Emotional Distress fails**

In order to support a claim of Intentional Infliction of Emotional Distress, Mr. Phillips must show that the conduct by the officers was outrageous (*Bogard v. Employers Cas. Co.*, 164 Cal.App.3d 602, 616 (1979)); that he suffered severe emotional distress (*Angie M. v. Superior Court*, 37 Cal.App. 4th 1217, 1227 (1995)); and that the conduct by the officers was intentional by being primarily directed at him or that the officers acted in reckless disregard of the probability that the conduct will cause severe emotional distress to him.  (*Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991).)

Here, the officers were carrying out a high risk arrest.  Their actions were meant to effect the most efficient and safe arrest possible.  Because Mr. Phillips actions had endangered the operation and the safety of the undercover officers, the officers conducted a high risk stop.  No actions by any of the officers were reckless or outrageous and all actions were to ensure the safety of not only the Officers and the bystanders but also the safety of Mr. Phillips, himself.  Mr. Phillips' action for Intentional

Infliction of Emotional Distress fails.

**H.      Cynthia Phillips' claim for Intentional Infliction of Emotional Distress fails**

   In order to support a claim of Intentional Infliction of Emotional Distress, Cynthia Phillips must show that the conduct by the officers was outrageous (*Bogard v. Employers Cas. Co.*, 164 Cal.App.3d 602, 616 (1979)); that she suffered severe emotional distress (*Angie M. v. Superior Court*, 37 Cal.App. 4th 1217, 1227 (1995); and that the conduct by the officers was intentional by being *primarily directed at her or that the officers acted, knowing she was there, in reckless disregard of the probability that the conduct will cause severe emotional distress to her.* (*Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991).)

   Here, the officers did not know Cynthia Phillips was sitting close-by in a car.  Some of the officers were aware that there was a woman yelling at them but did not know who that woman was.  In addition, the Officers were carrying out a high risk arrest.  Their actions were meant to effect the most efficient and safe arrest possible; not having anything to do with Cynthia Phillips.  No actions by any of the officers were aimed at Cynthia with the possible exception of Sergeant Schraer stopping to try to talk to her.  Trying to calm her down or, even taking Cynthia's facts to be true, keeping her back from a high risk arrest where an officer had his gun drawn for a period of time, does not rise to the level of reckless disregard of the probability that the conduct would cause severe emotional distress.  Cynthia Phillips' action for Intentional Infliction of Emotional Distress fails.

**<u>CONCLUSION</u>**

   For the reasons and law stated above a verdict should be entered in favor of defendants.

Dated: October 17, 2006    Respectfully submitted,

           MEYERS, NAVE, RIBACK, SILVER & WILSON

           By:_____/s/_____Kimberly E. Colwell_____
             Kimberly E. Colwell
             Attorneys for Defendants
             CITY OF FAIRFIELD, POLICE OFFICERS MARK
             SCHRAER, CHAD TIGERT, STEVEN
             TROJANOWSKI, JR., STEPHEN RUIZ, TROY
             OVIATT, FRANCO CESAR and CADE BECKWITH

864293_1.DOC